## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GLENN HAYNES,

       Plaintiff,

vs.                                                  CASE NO. 3:11-cv-373-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1).  Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments.  This Court has authority to conduct the requested review.  42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #23, Plaintiff's Brief).  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #26, Defendant's Brief).  The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).

The parties consented to the exercise of jurisdiction by a magistrate judge and the case was referred to the undersigned by the Order of Reference dated August 18, 2011(Doc. #20).  Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making

its determinations.  Accordingly, the matter has been decided on the written record.

For the reasons set out herein, the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for additional proceedings consistent with this Order and Opinion.

## PROCEDURAL HISTORY

In the instant action, Plaintiff Haynes filed applications for DIB and SSI on April 3, 2007 (Tr. 106-11).  Plaintiff asserted the onset date of disability was February 16, 2006.[1] *Id*.  After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on March 19, 2009 in Jacksonville, Florida before Administrative Law Judge (ALJ) Robert Droker (Tr. 26-56).  During the hearing, Plaintiff appeared and testified in person, as did vocational expert (VE) Mark Capps.  Plaintiff was represented during the underlying administrative phase of the proceedings by attorney Bartholomew C. Zadel (Tr. 26, 77-78). On April 16, 2009, ALJ Droker issued a hearing decision denying Plaintiff's claims (Tr. 10-25).[2]  The Appeals Council (AC) denied Plaintiff's request for review on February 16, 2011, making the hearing decision the final decision of the Commissioner (*see* Tr. 2-5).

The instant action was filed in federal court on April 18, 2011(Doc. #1, Complaint)

---

[1]Although Defendant and the ALJ indicate protective filing dates of October 17, 2006 for Plaintiff's DIB application and March 27, 2007 for the SSI application, and Plaintiff alleges October 17, 2006 is the protective filing date for both applications the Court is unable to locate support for those dates in the record.  *See* Defendant's Brief at 1; Plaintiff's Brief at 2.  The applications reflect the April 3, 2007 filing date (Tr. 106-11).  The Case Development Sheet reflects a case receipt for Glenn P. Haynes on September 27, 2006 and an assignment of October 2, 2006 (Tr. 128-29).  Neither party has raised this discrepancy, which the Court now finds is harmless error.

[2]Although the Court is somewhat troubled by Defendant's reference to a decision dated December 8, 2009, for which there is no support in the record, this error is also deemed to be harmless to the resolution of this case.

by Plaintiff's current counsel of record, Mr. N. Albert Bacharach, Jr., Esq.   The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

Plaintiff may be entitled to disability benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[3]  For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520.  Plaintiff bears the burden of persuasion through step four, while at step five, the burden temporarily shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

The ALJ's decision dated April 16, 2009, denied Plaintiff's claims (Tr. 10-25).  The ALJ found that Plaintiff met the insured status requirements through September 30, 2007

---

[3]Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

(Tr. 15; *see also* Tr. 113).   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 16, 2006 (Tr. 15).   At step two, the ALJ found Plaintiff's history of head trauma, petit mal seizures, degenerative joint disease of the left should status post fracture, degenerative lumbar disc disease, degenerative cervical disc disease status post cervical fusion, bi-polar disorder, and substance abuse disorder were severe impairments (Tr. 15).   At step three, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4 (Tr. 15).

The ALJ assessed Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with some restrictions  (Tr. 17).   At step four, the ALJ determined that Plaintiff could not perform the past relevant work, which was identified by the VE as that of a construction worker, sandblaster and welder (Tr. 23).   However, at step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform"  (Tr. 24).

Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date through the date of the decision (Tr. 25).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).   The Commissioner's findings of fact are conclusive if supported by

substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion.  *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court does not re-weigh the evidence, but determines whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that Plaintiff is not disabled under the Social Security Act.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th

Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff was born on June 9, 1966 (Tr. 31). Thus, he was forty-two years old at the time of the administrative hearing. Plaintiff testified at the hearing that he obtained his General Education Diploma (GED) (Tr. 31). Plaintiff has past relevant work experience as a sandblaster, a painter, a welder, a roofer and a carpenter (Tr. 31-33, 37). He alleged a disability onset date of February 16, 2006 (Tr. 38). In his Disability Report-Adult, Plaintiff alleged that he is limited in his ability to work due to "steel rod in neck problems, back problems, shoulder problems and hand problems due to accident, bipolar disorder, and depression" (Tr. 145).

Plaintiff raises two interrelated issues on appeal. First, Plaintiff claims the ALJ failed to properly determine Plaintiff's mental residual functional capacity (RFC). Plaintiff's Brief at 7-12. Second, Plaintiff charges the ALJ erred "by not asking hypotheticals, which included all of Plaintiff [Haynes'] physical and mental limitations to the vocational expert." *Id.* at 7, 12-16.[4]

---

[4]In the body of his brief, Plaintiff appears to claim ALJ Droker failed to consider the combined effects of all Plaintiff's impairments. *See* Plaintiff's Brief at 7, 13. Plaintiff failed, however, to develop this argument. Thus, the Court finds Plaintiff has abandoned this issue. *See Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002) ("Such a cursory treatment of a potentially important issue is taken by this Circuit to be a sign that the party has abandoned the argument.") (internal citations omitted).

In general, Defendant asserts the Commissioner's decision that Plaintiff Haynes is not disabled under the Social Security Act is supported by substantial evidence. *See generally*, Defendant's Brief.   In particular, Defendant argues the ALJ adequately accounted for Haynes' mental impairments in Haynes' RFC and in the hypothetical questions asked of the vocational expert because there is evidence in the record to support the ALJ's finding Haynes can perform low stress jobs. *Id.* at 5-14.

Upon review of the ALJ's decision and the record evidence, the Court finds reversible error.  It is unclear whether the ALJ adequately accounted for Haynes' severe mental impairments in the assessed RFC and in the hypothetical questions posed to the vocational expert.

**Plaintiff's Residual Functional Capacity**

As noted earlier, the ALJ in this case found Plaintiff's bipolar disorder and substance abuse disorder were severe impairments (Tr. 15).[5]  By definition, a severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  Thus, the ALJ found Plaintiff had severe mental impairments that affected his ability to work.

The residual functional capacity, or "RFC," is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite the claimant's impairments.  20 C.F.R. § 404.1545.  The Eleventh Circuit has noted that the focus of an RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting

---

[5]Plaintiff does not contest the ALJ's findings regarding Plaintiff's physical impairments or limitations.  Thus, the Court limits its discussion and analysis to the issues concerning Plaintiff's mental impairments, as raised in Plaintiff's Brief.

medical consequences. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique ("PRT"), that is set out at 20 C.F.R. § 404.1520a. Section 404.1520a (b)(2) provides the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section. Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace be rated using a five point scale of: "None, mild, moderate, marked, and extreme," and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more." Section 404.1520a (e)(2) provides in pertinent part that "[a]t the administrative law judge hearing [level] . . . the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

In this case, the ALJ found Haynes had the severe impairments of bipolar and substance abuse disorders. The effects of an impairment are measured by the limitations on the ability to work. The ALJ must consider a claimant's limitations on the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe). In accordance with the requirements of 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff Haynes mental impairments caused mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation (Tr. 16). Thus, the ALJ found Plaintiff was moderately limited

8

in two of the four functional areas related to mental impairments.

If the ALJ finds a claimant's impairment or combination of impairments to be severe, then the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  In this case, the ALJ found Haynes severe impairments did not meet or medically equal the criteria of any one of the listed impairments (Tr. 15-16). In fact, the ALJ specifically found Plaintiff Haynes severe mental impairments did not meet or equal, singly and in combination, the required level of functional limitation under the "B" or "C" criteria of the Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.09 (Substance Addiction Disorders) (Tr. 16-17).

The four functional areas summarized by application of the Psychiatric Review Technique form (PRTF) are broad categories to assist the ALJ in determining at steps two and three which of the claimant's mental impairments are severe and from which the ALJ must determine the mental functional limitations on the claimant's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520a(c); SSR 96-8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996).  Determination of the functional limitations is a "highly individualized" and fact specific determination.  *Id.*  Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.  20 C.F.R. § 404.1521(b). The category of concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.  The

9

category of social functioning refers to the capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals such as family, friends, co-workers, persons in authority. *Id.* The ALJ found Plaintiff has moderate difficulties in both of these categories.

At the request of the Social Security Administration, Plaintiff Haynes was evaluated by Dr. Louis Legum, Ph.D., a clinical psychologist, on November 9, 2006 and again on November 14, 2007 (Tr. 343-47, 770-76). As a result of the first evaluation, Dr. Legum diagnosed Plaintiff with a psychotic disorder due to head trauma, with hallucinations; pain disorder associated with psychological factors and a general medical condition; alcohol dependence; mood disorder due to alcohol; and, personality disorder, NOS with paranoid and antisocial traits (Tr. 345-46). In November 2007, Dr. Legum diagnosed Plaintiff with alcohol dependence; alcohol induced mood disorder; and alcohol induced psychotic disorder, with hallucinations (Tr. 771, 776). On both occasions, Dr. Legum assessed a GAF score of 50-55 (Tr. 347, 771, 776), which indicates some moderate to serious symptoms.[6] *Id.* Dr. Legum found Plaintiff was cooperative but his affect was restricted on both occasions, and his mood was angry in 2006 but mildly dysphoric in 2007. *Id.* Plaintiff

---

[6]The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

Haynes reported during the November 2007 examination that he was taking a myriad of psychotropic and other medications (*see* Tr. 775).[7]  Dr. Legum's later examination found Haynes' thought process was integrated and his memory, recent and remote, appeared intact, but his judgment and insight were minimal.  *Id.*  ALJ Droker gave Dr. Legum's opinion evidence "significant weight" (Tr. 23).  Overall, Dr. Legum's findings of Plaintiff's mental state were remarkable only for Haynes' alcohol and substance abuse history and impaired judgment, but his reports do not address how Plaintiff would react to stress in the work environment, such as the completion of tasks under production quotas or criticism of performance by supervisors (*see* Tr. 343-47, 770-76).

Two psychologists reviewed Haynes' medical records at the request of the Social Security Administration.  Defendant argues these opinions support the ALJ's finding of Plaintiff's mental RFC.  Defendant's Brief at 8-11.  Notwithstanding the ALJ's failure to address these opinions in his decision, the Court finds Defendant's argument is disingenuous.  The reviewing psychologists found Haynes' records reflected a more restrictive mental functional capacity than set forth in the RFC assessment of Haynes by ALJ Droker.

Dr. Thomas Conger, Ph.D., reviewed Plaintiff's records in May 2007 and found Plaintiff's mental impairments resulted in mild difficulties in activities of daily living and maintaining concentration, persistence or pace, but moderately limited in social functioning, with no episodes of decompensation (*see* Tr. 366-78, PRTF completed May 3, 2007).  Dr. Conger further found Haynes was mentally "capable of performing simple, repetitive tasks

---

[7]Propranol, Ranitidine, Thiothixene, Bentztropine and Citalopram

on a sustained basis" and he was "judged to have adequate understanding and adaptation abilities," as well as the ability to relate effectively in general, but he also had a personality style [that] may result in social difficulties as well as a negative reaction to criticism at times (Tr. 379-82, Mental Residual Functional Capacity (MRFC) Assessment completed on May 3, 2007).   In marking categories on the MRFC form, Dr. Conger found Haynes was not significantly limited in all areas except three (Tr. 380-81).   Dr. Conger marked that Haynes was *moderately limited* in the ability to accept instructions and respond appropriately to criticism for supervisors, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 381) (emphasis added).

Dr. Patrick Peterson, Ph.D., J.D., completed his review of Plaintiff's records in December 2007 (Tr. 777-93).   Dr. Peterson found Plaintiff had no limitation in activities of daily living, moderate limitations in maintaining social functioning, and he found there was insufficient evidence for him to determine Plaintiff's limitations with maintaining concentration, persistence, or pace (Tr. 787).   Dr. Peterson found no evidence of any episodes of decompensation.   *Id.*  In completing a MRFC assessment, Dr. Peterson found the records from Plaintiff's treating sources and the consultative examiner, Dr. Legum, were contraindicative of a diagnosable mental disorder other than mild to moderate adjustment reaction arising within a generally irresponsible, self-serving, antisocial individual (Tr. 793). Dr. Peterson stated he believed Haynes *may* be still capable of sustaining the mental demands of "appropriate concentrated task-oriented activity" as of December 2007, absent "indication of any significant compromises to his functional capacities deriving from any

12

mental factors either prior or subsequent" to Haynes' date last insured in September 2007. *Id.* (emphasis added).[8]

Dr. Conger and Dr. Peterson both made findings of Haynes' mental limitations that exceed ALJ Droker's determination that Plaintiff's mental impairments limit him only to "low stress" jobs.  Moreover, it has been recognized that "stress" in the workplace "is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation."  *Lancellotta v. Sec'y of Health & Human Servs.*, 806 F.2d 284, 285 (1st Cir. 1986).

While the phrase "low stress" may be somewhat vague, its use as a restriction on a plaintiff's ability to work is not necessarily fatal to an ALJ's decision finding a claimant is not disabled.  *See Lewis v. Astrue*, No. 1:09-cv-139-MP-AK, 2010 WL 2745954, *12 (N.D. Fla. Jul. 9, 2010) (citing with approval a number of "pre-*Winschel*" cases treating "low stress" work as synonymous with "non-production type of work") (internal citations omitted); *also see Nelson v. Barnhart*, No. 06-C-249-C, 2006 WL 3042954 (W.D. Wis. Oct. 24, 2006) (finding the plaintiff's RFC and the hypothetical question asked of the vocation expert adequately accounted for the plaintiff's *non-severe* mental impairment with the inclusion of the restriction "no unusual stress") (emphasis added).[9]

---

[8]The Court is unable to discern Dr. Peterson's intended meaning of "appropriate concentrated task-oriented activity."  No example of such work is provided in Dr. Peterson's opinion and Dr. Peterson expressed an inability to categorize Plaintiff's limitations within the domain of maintaining concentration, persistence or pace.

[9]Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

In order to determine whether "a low stress job" represents a satisfactory restriction on a particular plaintiff's ability to work, the ALJ must make a highly individualized inquiry that complies with the "function by function assessment" addressing the plaintiff's work related mental activities set forth in SSR 96-8p.  In so doing, the RFC assessment must address both the remaining exertional and non-exertional capacities of the individual.[10]  The RFC assessment must also include a narrative description of how the evidence supports each conclusion by discussing objective medical and other evidence, including the individual's complaints of pain, and medical source opinions. *Id.* at *7.

In Mr. Haynes' case, the Court is not satisfied the ALJ made the function by function assessment that addresses Haynes' ability to perform work related activities.  This Court previously has found a restriction to "low stress" work, or the avoidance of "unusual stress," was insufficient to account for a plaintiff's *moderate* limitations within the four broad functional areas.  *See Berry v. Astrue,* No. 3:09-cv-885-J-TEM, 2011 WL 1135091 (M.D. Fla. Mar. 28, 2011) (finding the need to avoid unusual stress did not adequately represent the plaintiff's moderate difficulties in social functioning that resulted from the plaintiff's severe affective disorder); *also see Brunson v. Astrue*, 850 F. Supp. 2d 1293 (M.D. Fla. 2011) (finding limiting the plaintiff to unskilled jobs without unusual stress did not address the impact of the plaintiff's moderate limitations in concentration, persistence, or pace on his ability to perform work-related activities).  Conversely, a number of courts within this

---

[10]Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  Nonexertional capacity consists of all work-related limitations and restrictions not encompassed in exertional capacity, including postural, manipulative, visual, communicative, and mental activities.  SSR 96-8p, 1996 WL 374184 at *5-6 (S.S.A. 1996).

district have found the limitation to "low stress" jobs or the avoidance of "unusual stress" was sufficient restriction for a plaintiff who had *only mild* difficulties within the four functional areas or *only a non-severe* mental impairment.  *See, e.g., Baker v. Astrue*, No. 5:09-cv-480-FtM-SPC, 2011 WL 611663 (M.D. Fla. Feb. 11, 2011) (finding limitation to simple repetitive tasks in a low stress environment adequately accounted for the plaintiff's non-severe mental impairments that resulted in mild limitations in the broad areas of functioning set out in the regulations); *Johnson v. Astrue,* No. 3:09-cv-492-J-JRK, 2010 WL 3894098 (M.D. Fla. Sept. 30, 2010) (finding no error with the ALJ's determination that limited the plaintiff to "avoid unusual stress" in light of the plaintiff's non-severe mental impairment and mild difficulties in the four functional areas, but reversing the ALJ on other grounds)*; Stout v. Astrue*,  No. 3:07-cv-987-J-TEM,  2009 WL 890388 (M.D. Fla. Mar. 31, 2009) (finding the ALJ's hypothetical question for the individual to avoid work with unusual stress adequately addressed the plaintiff's severe affective disorder that caused only mild to moderate difficulties in concentration, persistence or pace).  Having found Plaintiff's severe mental impairments resulted in moderate difficulties in two of the four mental domains of functioning, it was incumbent upon the ALJ to incorporate those moderate difficulties into Plaintiff's residual functional capacity assessment.

Moreover, a number of the ALJ's findings are not supported by substantial evidence. For example, in assessing Plaintiff's mental limitations, the ALJ found, "Though the [Plaintiff] alleges he flies into unprovoked rages, the record only shows that he tends to experience irritability" (Tr. 22).  That Plaintiff only tends to experience irritability is belied by his reported criminal record.  Plaintiff told Dr. Legum that he had been incarcerated for attempted murder, that was pled down to aggravated battery, and he had been arrested

in the past for battery and domestic violence (Tr. 344, 774). The undersigned finds no evidence in the record that contradicts Plaintiff's statements.

Limiting Haynes to a low stress job says nothing about his moderate difficulties in concentration, persistence or pace, and fails to adequately address Haynes moderate difficulties in social functioning. A "low stress job" does not address difficulties in relationships with the general public, supervisors or co-workers. Evidence in the record suggests that Plaintiff has had difficulties in these relationships (*see, e.g.*, Tr. 381). The Regulations clearly state that these relationships fall under the umbrella of social functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Thus, the ALJ should have addressed these difficulties in assessing Plaintiff's RFC. Having failed to do so, the ALJ's determination of Plaintiff's mental residual functional capacity was deficient.

## The ALJ's Hypothetical Questions

Under certain circumstances, an elaborate hypothetical question asked of the vocational expert and relied upon by the ALJ may overcome a deficient finding in a plaintiff's residual functional capacity assessment. *See Corbitt v. Astrue*, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) ("in that the ALJ ultimately relied on testimony for a vocational expert . . . the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical question posed to the VE") (internal citation omitted).

In this case, ALJ Droker ultimately found Haynes had the RFC to perform a range of sedentary work, with additional restrictions (Tr. 17). The ALJ stated Plaintiff "must have the option to sit and or stand. He must avoid ladders or unprotected heights, and avoid operation of heavy moving machinery. He can occasionally bend, crouch, kneel, stoop,

squat, or crawl. [Plaintiff] can only occasionally bend, crouch, kneel, stoop, squat[,] crouch or crawl, and he must avoid all reaching with his left arm.  He will need a low stress job." (Tr. 17.)  Thus, the need for a low stress job is the only restriction related to Haynes' mental impairment.

When, as in this case, the ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ, however, is not required to include in the hypothetical question the non-severe impairments, or the limitations that were properly rejected as unsupported.  *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Loveless v. Massanari,* 136 F.Supp.2d 1245, 1250-51 (M.D. Ala. 2001).

At the March 19, 2009, administrative hearing, vocational expert Mark Capps testified (Tr. 51-56).  The VE was present throughout the entire hearing, heard the Plaintiff's testimony, was sworn in prior to giving testimony and testified that he had reviewed the record made available to him prior to the hearing (Tr. 28, 51).  ALJ Droker asked the VE Capps to:

> Assume I find that the claimant is 42 years old, has a GED and further i find that he can only perform light work, is further limited by the following exertional and non-exertional impairments.  He needs a sit, stand option; needs to avoid ladders or unprotected heights; needs to avoid the operation of heavy moving machinery.  He needs a low stress work environment.  He can only occasionally bend, crouch, kneel, stoop, squat or crawl; needs to avoid . . . reaching at all with the left arm.

(Tr. 52.)  In response to this hypothetical question, the VE testified this individual would be

unable to perform Plaintiff's past relevant work, which he earlier had identified as a construction worker II, a sandblaster and a welder (Tr. 51-52).

The ALJ modified the hypothetical question to assume entry level work in which the claimant had no skills or semi-skills at all, but was the age previously described and had the same work experience and education previously described (Tr. 52).  The VE was directed to assume further the claimant could perform light work and had the same exertional and non-exertional limitations originally described.  *Id.*  Under this scenario, the ALJ told the VE he could include sedentary jobs in his list of available jobs.  *Id.*  VE Capps identified the sedentary exertional jobs of surveillance system monitor and food and beverage order clerk as work the claimant could perform (Tr. 52-53).  The VE further testified the identified jobs would normally have about a fifteen minute break every four hours  and a thirty or a sixty minute break for lunch (Tr. 53).

Although the ALJ's hypothetical questions to the VE included all of the limitations found in the ALJ's assessment of Plaintiff's RFC (Tr. 17), it is not the consistency between the hypothetical questions and the RFC assessment that Plaintiff disputes.  Plaintiff argues both the mental RFC and the hypothetical questions asked did not adequately represent his limitations.  *See generally*, Plaintiff's Brief.  As noted above, "when the ALJ relies on the testimony of a VE, 'the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE' rather than the RFC simply cited in the ALJ's decision."  *Brunson v. Astrue*, 2011 WL 839366, at *10 (quoting *Corbitt v. Astrue*, 2008 WL 1776574, at *3).  In *Brunson*, the ALJ stated the hypothetical person needed to "avoid unusual stress" and needed "simple tasks."   *Id.* at *11.  In that case, the Court found the ALJ did not explicitly or  implicitly  account  for  the  plaintiff's  moderate  difficulties  in  maintaining

18

concentration, persistence, or pace.  *Id.*

This is a fact specific inquiry in which the medical evidence may or may not demonstrate whether generic limitations, such as to unskilled work or to jobs without unusual stress, for example, may sufficiently account for the plaintiff's mental impairments. *Id.*  However, it is for the Commissioner, not the courts, to weigh the medical evidence and make the necessary findings.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (stating a court may not decide facts anew, may not reweigh the evidence, and may not substitute its own judgment for that of the Commissioner) (internal citation omitted).

In this case, Defendant argues the ALJ indicated medical evidence supported finding Plaintiff's ability to work was not affected by the limitations assessed by the ALJ in his psychiatric review technique assessment of Plaintiff.  Defendant's Brief at 17-18. Review of the ALJ's decision, however, reveals ALJ Droker failed to make findings sufficient for the Court to ascertain whether the mental  limitation of low stress work, as stated in the RFC and the hypothetical questions, adequately encompassed Plaintiff's severe mental impairments.   For example, the ALJ correctly found that Plaintiff had occasional hallucinatory experiences, which the ALJ characterized as mild (Tr. 16; *see also, e.g.,* Tr. 43-44, 345, 775, 411-52).   Plaintiff's complaints of hallucinations are found repeatedly throughout the record.  *See id.*  The ALJ also correctly found that the report of his November 2007 consultative examination, Dr. Legum stated his opinion that Plaintiff's hallucinations were most probably due to alcohol (Tr. 16; *see also* Tr. 775).  While these findings support the ALJ's determination that Plaintiff has moderate difficulties in concentration, persistence or pace, and in social functioning, they do not address the impact of those moderate difficulties on Plaintiff's ability to perform work related activities,

19

nor do they support a generic limitation to "low stress" jobs.  Just as the Eleventh Circuit found in *Winschel v. Comm'r of Soc. Sec.* that a limitation to unskilled work, without more, was insufficient to account for Winschel's moderate difficulties in concentration, persistence or pace, this Court finds on the facts of this case that the limitation to low stress jobs is insufficient to account for the whole of Haynes' severe mental impairments, most particularly his moderate difficulties in both the domains of concentration, persistence or pace, and social functioning.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011).[11]

## CONCLUSION

Thus,  ALJ Droker failed to make findings supported by substantial evidence and sufficient for the Court to ascertain whether the limitation to a low stress job, as stated in the RFC and the hypothetical questions, adequately encompassed Plaintiff's severe mental impairments.  Therefore, the Court does not find the ALJ's decision is fully supported by substantial evidence and remand is necessary to correct this flaw.

For the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g).   The case is **REMANDED** for additional proceedings consistent with this Order and Opinion.[12]  On remand, the Commissioner is

---

[11]The Court recognizes that the *Winschel* opinion was issued after the ALJ entered his decision to deny Mr. Haynes' applications for disability; however, *Winschel* is a published opinion and therefore controlling law in the Eleventh Circuit.

[12]If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the date the Commissioner issues a "Notice of Award" letter to the Plaintiff/claimant to award disability benefits.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be

instructed to: (1) reassess Plaintiff's residual functional capacity in light of this Order and Opinion; (2) pose a hypothetical question to the VE that specifically accounts for Plaintiff's mental limitations; and, (3) conduct any other proceedings deemed appropriate.

Plaintiff Haynes is cautioned, however, that this opinion does not suggest he is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Cannon is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

**DONE AND ORDERED** at Jacksonville, Florida this 27th  day of September, 2012.


_____
THOMAS E. MORRIS
United States Magistrate Judge


Copies to all counsel of record
        and *pro se* parties, if any

---

stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added). This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.